## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| T.C., through his Next Friend Shanah Craig; | ) | |
| | ) | |
| *Plaintiff[1]*, | ) | |
| | ) | **Case No.** |
| | ) | |
| **v.** | ) | **Judge**_____ |
| | ) | |
| | ) | **COMPLAINT FOR** |
| | ) | **DAMAGES** |
| **MAURY COUNTY GOVERNMENT,** | ) | |
| a public entity, | ) | **JURY TRIAL** |
| 41 Public Square | ) | **DEMANDED** |
| Columbia, Tennessee 38401; | ) | |
| | ) | |
| **MAURY COUNTY PUBLIC SCHOOLS,** | ) | |
| a public entity, | ) | |
| 501 West 8th Street | ) | |
| Columbia, Tennessee 38401; | ) | |
| | ) | |
| **MAURY COUNTY SHERIFF'S** | ) | |
| **DEPARTMENT,** | ) | |
| a public entity, | ) | |
| 1300 Lawson White Drive | ) | |
| Columbia, Tennessee 38401; | ) | |
| | ) | |
| **MAURY COUNTY SHERIFF BUCKY ROWLAND** | ) | |
| in his official and individual capacities; | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **TIMOTHY BYRDSONG** | ) | |
| in his official and individual capacities; | ) | |
| | ) | |
| *Defendants.* | ) | |

---

[1] Plaintiff T.C. is a minor child. He is referred to by his initials in accordance with Federal Rule of Civil Procedure 5.2(a)(3).

1

## COMPLAINT

Plaintiff T.C., by and through his next friend, Shanah Craig, hereby submits this Complaint under 42 U.S.C. § 1983 and the Fourth Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution and pendent state law statutory and common law.  In support thereof, Plaintiff T.C. alleges the following:

## I.  PRELIMINARY STATEMENT

1.      This is a civil rights action arising under 42 U.S.C. § 1983 and the Fourth Amendment, Fifth Amendment, Eighth Amendment, and Fourteenth Amendment to the United States Constitution; Article I, §§ 7, 8, and 16 of the Tennessee Constitution; Tenn. Code Ann. § 29-20-201 *et seq*.; Tenn. Code Ann. § 8-8-302; and Tennessee common law.

2.      On November 30, 2018, Defendant Byrdsong was stationed as a School Resource Officer at E.A. Cox Middle School.  During an incident with between T.C. and another student, Defendant Byrdsong picked T.C. up to his shoulder-level and slammed his body into the tile floor rendering T.C. unconscious for nearly one minute.  While T.C. remained prone on the ground, Defendant Byrdsong handcuffed his arm which was stiffened by T.C.'s unconsciousness.  This vicious assault was completely unjustified.  Defendant Byrdsong was terminated on December 14, 2018 for this unlawful use of force.  On March 7, 2019, Defendant Byrdsong was indicted for Felony Official Misconduct, Felony Aggravated Assault, and Felony Aggravated Child Abuse by the Maury County Grand Jury for this attack on T.C.

3.      At the time of this incident, the Defendant Maury County Sheriff's Department ("MCSD") employed Defendant Byrdsong as an SRO.  Pursuant to a written agreement with Maury County Public Schools ("MCPS") implementing its SRO program, Defendants Maury County Government ("Maury County"), MCSD, and MCPS stationed Defendant Byrdsong at E.A.

Cox where the assault took place. They did so without having an adequate training program or properly training or otherwise preparing Defendant Byrdsong to work with young children. They then further failed to remove him from his post or train him after two use-of-force incidents against students prior to the assault on T.C. These failures led directly to T.C.'s injuries.

4.     Defendants' actions and/or inactions caused Plaintiff T.C. to suffer physical injury, physical pain and suffering, and emotional pain and suffering.

5.     After the incident, the government entities engaged in retaliation. T.C. remained enrolled in E.A. Cox Middle School and attempted to finish his sixth-grade year on normal course. T.C. has a constitutionally guaranteed property interest in his public education. T.C.'s engagement in this protected conduct has brought continuous retaliation against him by Defendant MCPS, and Defendants MCSD and Maury County through the SRO who replaced Defendant Byrdsong. T.C.'s continued pursuit of his education at E.A. Cox after Defendant Byrdsong's assault and termination has brought harassment by employee-agents of Defendants MCPS, MCSD, and Maury County including school faculty, counselors, the Principal and the new SRO who replaced Defendant Byrdsong.

## II. JURISDICTION AND VENUE

6.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343 (civil rights jurisdiction). This Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1347.

7.     Venue in this district is proper under 28 U.S.C. § 1391(b)(1) because Defendants Maury County, MCPS, and MCSD reside in this district and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred in this district.

3

## III. THE PARTIES

8.     Plaintiff T.C. is 12 years old.  At all times relevant to this lawsuit, he was enrolled as a student in MCPS.  He proceeds in this lawsuit through his mother and legal guardian, Shanah Craig, who is acting as his next friend.  Fed. R. Civ. P. 17(c).  Plaintiff T.C. is a minor resident of Columbia, Maury County, Tennessee.

9.     Defendant MCSD is a law enforcement agency operating in Maury County Tennessee and organized under the laws of the State of Tennessee. At the time of Defendant Byrdsong's assault on T.C., Defendant Byrdsong was a deputy and SRO for Defendant MCSD and therefore, Defendant Maury County.  Defendant MCSD can be served with service of process on Maury County Chief Executive Officer Andy Ogles at 41 Public Square, Columbia, TN 38401.

10.     Defendant MCPS is a public entity operating in Maury County Tennessee and organized under the laws of the State of Tennessee.  MCPS is a public-school district.  The school T.C attended where the assault by Defendant Byrdsong took place, E.A. Cox Middle School, is one of the schools within MCPS. Defendant MCPS can be served with service of process on Maury County Chief Executive Officer Andy Ogles at 41 Public Square, Columbia, TN 38401.

11.     Defendant Maury County is a municipality in Maury County and is organized under the laws of the State of Tennessee.  Pursuant to T.C.A. § 8-8-302, Plaintiff may bring this action for injury and damage resulting from the act of a sheriff deputy against the county in which the sheriff serves provided that the deputy, at the time of such occurrence, acted by virtue of or under color of the office.  At the time of Defendant Byrdsong's assault on T.C., Defendant Byrdsong was acting under color of his office with Defendants MCSD, Maury County, and MCPS. Defendant Maury County can be served with service of process on Maury County Chief Executive Officer Andy Ogles at 41 Public Square, Columbia, TN 38401.

4

12.     Defendant Byrdsong was continuously employed as a police officer with MCSD from September 26, 2017 to December 14, 2018. At all times relevant to this lawsuit, pursuant to a written agreement between the Defendants MCSD and MCPS, Defendant MCSD employed and MCPS used Defendant Byrdsong as a SRO at E.A. Cox Middle School in Columbia, Tennessee, where the incident occurred.  At all times relevant to this lawsuit, Defendant Byrdsong was acting under color of state law as an agent of Defendants MCSD, MCPS, and Maury County. Defendant Byrdsong, in his individual capacity, can be served with service of process at 1500 Hampshire Pike, Apartment L-1, Columbia, Tennessee 38401, and in his official capacity, on Maury County Chief Executive Officer Andy Ogles at 41 Public Square, Columbia, TN 38401.

13.     Defendant Sheriff Bucky Rowland ("Defendant Rowland") at all times relevant an employee of Defendants Maury County and MCSD and the final policy maker for Defendant MCSD.  At all times relevant to this lawsuit, Defendant Rowland was acting under color of state law as an agent of Defendants MCSD and Maury County.  Defendant Rowland, in his individual capacity, can be served with service of process, at his office located at 1300 Lawson White Drive, Columbia, Tennessee 38401, and in his official capacity, on Maury County Chief Executive Officer Andy Ogles at 41 Public Square, Columbia, TN 38401.

## IV.  FACTS

A.     **The Assault.**

14.     T.C. is 12 years old.  He is currently enrolled as a seventh-grade student at E.A. Cox Middle School which is a part of Defendant MCPS.

15.     Defendant Byrdsong assaulted T.C. when T.C. was 11 years old and enrolled in sixth grade.  At the time of the assault, T.C. was approximately five feet tall and weighed about 114 pounds.

16.     On November 30, 2018, T.C. was among other students in the school's indoor gymnasium playing basketball and tag.  One of these other students was J.R.  The students began "necking" each other, which is a game involving playful slaps to neck area.

17.     The game escalated until J.R. and a friend of T.C's were about to fight.  T.C. intervened to stop the escalation before his friend got in trouble.  T.C. then became a target of J.R. who "necked" him hard.  The boys went back and forth, which drew the attention of attending teachers.

18.     One of these teachers, Daryl Hodge, grabbed T.C. and walked him out of the gym. Another teacher grabbed J.R. and also walked him towards the exit of the gym.  At this point, Defendant Byrdsong approached J.R. and stood in between the boys.

19.     When J.R. continued to taunt T.C., T.C. pulled away from Daryl Hodge and attempted to engage J.R.  At this point, Defendant Byrdsong put both of his arms around T.C., picked him up to Defendant Byrdsong's full height, and body slammed him to the ground with such force that T.C. was rendered unconscious.

20.     Defendant Byrdsong then stepped over T.C.'s body and grabbed his arm which was visibly stiffened in his unconscious state.   Straddling T.C.'s unconscious body, Defendant Byrdsong handcuffed T.C.'s stiffened arm.    Defendant Byrdsong attempted to move T.C. but stopped.  Defendant Byrdsong then stepped back over T.C. and tried to move T.C.'s legs.  At this point, T.C.'s head moved in his first voluntary movement after 48 seconds of apparent unconsciousness.

21.     Defendant Byrdsong attempted to lift T.C. up by putting his hands underneath T.C.'s arms, but he could not lift T.C. who was unable to assist because of his injuries.

22.     Defendant Byrdsong held T.C. up in a sitting position with his hands under T.C.'s arms before starting to pull him up again.  Although T.C. was unable to stand on his own due to semi-consciousness, Defendant Byrdsong placed T.C.'s other arm, which was limp, in the open handcuff locking both of his hands.

23.     The school nurse, Ashley Endsley, arrived and held T.C.'s head as he attempted to hold up his own weight.  Ms. Endsley, Defendant Byrdsong, and T.C. then walked to the school clinic.

24.     T.C.'s last memory before waking up in the nurse's office was seeing Defendant Byrdsong move towards him as T.C. approached J.R. at the entrance to the gym.

25.     When Ms. Endsley asked T.C. how he was feeling, T.C. responded saying he felt "dizzy and confused."   Ms. Endsley checked T.C.'s body and felt a knot on his head from where he hit the floor.  T.C. described pain in the left side of his chest.  T.C. was told to take a nap.

26.     Defendant Byrdsong contacted T.C.'s mother, Ms. Craig, after school and told her that T.C. had been in a fight that day at school.  Defendant Byrdsong told Ms. Craig that when he and another teacher tried to calm T.C. down that T.C. lunged at the other boy.  Defendant Byrdsong told Ms. Craig that T.C. was being charged with assault.  Although Defendant Byrdsong listed himself as the victim in the Maury County Juvenile Court Petition charging T.C. with assault, he told Ms. Craig on the phone that he did not think that T.C. attempted to assault him.  Defendant Byrdsong only told Ms. Craig that he had to put T.C. up against a wall.

27.     Defendant Byrdsong told Ms. Craig that T.C. needed to be appear on December 11, 2018 for the assault charge in Maury County Juvenile Court.  Ms. Craig initially thought that T.C. was being charged for an assault against another student not against Defendant Byrdsong.  Through

a subsequent conversation with then-Vice Principal Mr. Dollar, Ms. Craig was led to believe that T.C. was only being charged with a disorderly conduct.

28.    Plaintiff T.C. was experiencing pain and memory loss after the assault, but no one working for Maury County, or anyone else, had told Platiniff T.C.'s mother that he had been knocked unconscious by Defendant Byrdsong. Because of the pain, on December 3, 2018, Ms. Craig took T.C. to the Fast Pace Urgent Care Clinic in Mount Pleasant, Tennessee.  He was diagnosed with strained chest and shoulder muscles.  T.C. lacked specific memory of what happened that injured him and Ms. Craig only knew what Defendant Byrdsong had told her had happened.

29.    None of the Defendants had informed Ms. Craig that T.C. had been slammed into unconsciousness by Defendant Byrdsong.

30.    T.C. pleaded not guilty to the (false) charge of assault against Defendant Byrdsong. This charge was later dismissed.

31.    Despite County denials, it soon came to light that the entire assault had been captured on school surveillance footage.  Defendant Byrdsong had mentioned to Ms. Craig that the incident was captured by video but he could only show her part of the video. Upon information and belief, someone from the school initially told Defendant MCSD that the incident had occurred where there was no video surveillance.

32.    On December 12, 2018, the day after T.C.'s appearance in court, Ms. Craig called Defendant MCSD to inquire about the incident and to file a complaint against Defendant Byrdsong.  Ms. Craig told Lieutenant Dwight Fautt that Defendant Byrdsong had told her that she could see part of the video of the incident.  Lt. Fautt responded saying if there was a tape that she would have access to it. Lt. Fautt could not confirm that video existed at that time.

33.     Lt. Fautt then called Defendant Byrdsong who told him that a video of the incident did exist but it was chopped up because it was from two different cameras.  Lt. Fautt told Defendant Byrdsong he needed to recover that footage from both cameras.  Defendant Byrdsong confirmed that he would email the videos.

34.     On December 13, 2018, Lt. Fautt received the footage of the incident from Defendant Byrdsong, Lt. Fautt reviewed the footage and felt the force used by Defendant Byrdsong was immediately and obviously excessive.  Chief Ray Jeter agreed with this assessment.  Sheriff Bucky Rowland was shown the video and agreed with the assessment.

35.     A meeting was held with Sergeant Ronnie Blackburn, Lieutenant Roscoe Voss, and Detective Steve Kindler for further review of the video.  After this review, the decision was made to terminate Defendant Byrdsong's employment on December 14, 2018.  Defendant Rowland decided to refer the case to the Maury County District Attorney's Office for further investigation for potential criminal charges against Defendant Byrdsong.

36.     Investigator Tommy Goetz with the Maury County District Attorney's Office visited Ms. Craig's home to interview her on December 17, 2018.  Ms. Craig had still not seen the video and asked Investigator Goetz if he would show it to her.  Investigator Goetz responded saying he would have to get permission to show her the video but he would ask.

37.     Later that day, Ms. Craig called Defendant MCSD for Defendant Rowland who did speak with her and told her that T.C. did not deserve to be treated or handled the way he was.  Defendant Rowland informed Ms. Craig that Defendant Byrdsong had been terminated.

38.     On December 19, 2018, T.C. was interviewed by Investigator Goetz in the presence of Ms. Craig.  After the interview, Investigator Goetz met with Ms. Craig in private and showed

her the video of the incident. Ms. Craig was horrified. Investigator Goetz stated that it was the worst case of child abuse he had seen in 37 years.

39.     Investigator Goetz interviewed Daryl Hodge, the teacher who initially grabbed T.C. in the gym and led him away from the other child. Mr. Hodge stated that after Defendant Byrdsong detained T.C. on the ground, T.C. was out of control, screaming, hollering, and cussing which caused Defendant Byrdsong to have to handcuff him. Mr. Hodge stated that T.C. just would not stop.

40.     Two days later, Investigator Goetz returned to interview Mr. Hodge again with a copy of the surveillance video. Investigator Goetz asked Mr. Hodge if he had seen the video and whether he would maintain that T.C. was out of control after Defendant Byrdsong slammed him to the ground. Mr. Hodge stated yes to both questions.

41.     Investigator Goetz then showed Mr. Hodge the video. After watching the video in front of Investigator Goetz, Mr. Hodge stated that he recalled it differently than what the video showed. Mr. Hodge asked if Investigator Goetz wanted him to change his story. Mr. Hodge asked Investigator Goetz what other teachers were saying. Investigator Goetz replied that he only wanted the truth and he could not tell Mr. Hodge what other teachers were saying.

42.     Ms. Craig coordinated with T.C.'s primary care physician, Dr. Christopher Patton at Old Harding Pediatric Associates, for a referral to the neurology unit at Vanderbilt University Hospital ("VUH"). On January 7, 2019, T.C. reported to Dr. Patton that he had experienced vomiting, confusion, and trouble concentrating after his head injury on November 30, 2018. T.C. also reported memory loss. Dr. Patton assessed T.C. with a concussion and referred him to VUH.

43.     On January 8, 2019, Ms. Craig took T.C. to Dr. Jesus Eric Pina-Garza at VUH Neurology who diagnosed T.C. with a concussion and noted T.C. experienced daily headaches

since the injury, which worsened by motion. Dr. Pina-Garza noted T.C. only experienced headaches a couple of times per year before the injury. T.C.'s headaches continue to present.

44. T.C. has also received therapy and counseling from Mental Health Cooperative ("MHCO") since the incident to address the trauma of his experience. Defendant MCPS has a counselor affiliated with MCHO on staff and on site at E.A. Cox Middle School.

45. At times, Defendant MCPS has, as will be more thoroughly discussed *infra*, sought to use the individual in this position to gain information from and influence T.C. during his sessions with the counselor. This caused T.C. to travel to the Nashville MHCO office to seek therapy and counseling from an uncompromised MHCO employee.

**B.** **Defendant Byrdsong**.

46. Defendant Byrdsong was hired by Defendant MCSD as a new deputy on September 26, 2017. He was initially assigned to Court Security.

47. Within three weeks of employment, Defendant Byrdsong received a disciplinary write up for "misuse of county vehicle." During the day on October 16, 2017, Defendant Byrdsong was seen driving his patrol car when he had called in sick that morning. When called by his supervisor, Lieutenant Brian Owens, to inquire about this, Defendant Byrdsong told Lt. Owens that he knew he was not supposed to use his county vehicle for personal business but he had to get his dog.

48. Six weeks later, Defendant Byrdsong was the subject of another incident report for exceeding the restriction on newly appointed deputies from responding to a dispatch call without supervision until the completion of approved basic police academy.

49. Four months later, Defendant Byrdsong was again the subject of an incident report concerning an outburst he had that was so troubling it resulted in a "no contact" order with

Dispatcher April Toombs until an internal investigation of the incident could be completed. Video surveillance with audio recording of this incident shows Defendant Byrdsong blocking Dispatcher Toombs's path out of her office while demanding that she allow him to know where she was sending officers so he could assist them without needing a command from his Sergeant.

50. These incidents demonstrate that Defendant Byrdsong had an attitude and disciplinary issue of which Defendant MCSD was aware long before he was stationed at E.A. Cox without training.

51. Defendant Byrdsong began basic training in the Tennessee Law Enforcement Training Academy on January 7, 2018. Defendant Byrdsong graduated from the Tennessee Law Enforcement Training Academy with a Certificate of Completion of Basic Police School on March 29, 2018. Defendant Byrdsong did not even complete his probationary period with Defendant MCSD until September 29, 2018.

52. Despite having several disciplinary write-ups and no specific SRO training, Defendant Byrdsong was first stationed as an SRO at E.A. Cox in May 2018 at the end of the school year. Before the end of Defendant Byrdsong's first month as an SRO, he had already used force against a student. This was the first of two uses of force at E.A. Cox by Defendant Byrdsong before use of force on November 30, 2018 against T.C.

53. In the first use of force on May 9, 2018, Defendant Byrdsong took a girl much smaller than T.C. to the ground. Sheriff Rowland described this incident as "definitely an aggressive use of force." In the second use of force, Defendant Byrdsong pushed a boy into a row of desks and took him to the ground. Both of these uses of force included Defendant Byrdsong placing the students in handcuff restraints after tackling them to the ground.

54.     In a fourth use of force on December 5, 2018, several days after the assault on T.C.,
Defendant Byrdsong tackled a boy to the ground inside the in-school suspension room while the
two were isolated.

55.     From the time Defendant Byrdsong was stationed as an SRO at E.A. Cox to the
time of his use of force against T.C., the Basic SRO course offered by the Tennessee School
Resource Officers Association ("TNSRO"), an affiliate of the National Association of School
Resource Officers ("NASRO"), was held six times in Tennessee.  Defendant Byrdsong attended
none of them. In that time, Defendant Byrdsong had also used force against two students and would
use force against two more before his termination.

56.     All four uses of force by Defendant Byrdsong involved taking a student to the
ground.  All four uses of force were approved by his supervisor, Officer Ronnie Blackburn.

57.     At the Civil Service Board ("CSB") hearing of Defendant MCSD's termination
decision, Defendant Byrdsong testified that use of force reports were made, reviewed, and
approved for each of these incidents.  These use of force reports were specifically requested from
the Defendant MCSD after review of the hearing transcript.  Only the use of force report for T.C.'s
assault has been provided.

58.     Defendant Rowland testified that in the year from January 2018 to December 2018
there were 15 uses of force out of all 25 of his SROs.  Defendant Byrdsong had four of those uses.
No other officer had more than Defendant Byrdsong, and only one other officer had as many as
Defendant Byrdsong.

59.     Defendant Byrdsong testified at the CSB hearing that he was aware of the TNSRO
training course and had requested to attend.  Defendant Byrdsong testified that he was unable to
attend on two occasions.  Defendant Byrdsong also testified that his request to attend on those

occasions was denied. This inconsistent testimony demonstrates that Defendant Byrdsong knew he should have received SRO training. However, it is not solely Defendant Byrdsong's responsibility that he receive training. Certainly, it is not Defendant Byrdsong's responsibility to supervise himself.

60.     Defendant Rowland testified at the CSB hearing that Defendant Byrdsong had told Defendant MCSD that he would be in National Guard Armory basic training on the same dates as the TNSRO training. Defendant Rowland also testified that Defendant Byrdsong did not ultimately go to the National Guard training due to some type of issue. All Defendants are responsible for Defendant Byrdsong's lack of SRO training.

61.     Defendant Byrdsong testified at the CSB hearing that in assessing and engaging T.C. he relied on the use of force continuum on which he was trained. Defendant Byrdsong did rely on the training in use of force that was provided by MCSD in assaulting T.C.

62.     T.C.'s injury is the obvious and direct result of Defendant Byrdsong's lack of SRO training and supervision by Defendants MCSD, Maury County, and MCPS.

**C.     Defendants MCPS and MCSD's SRO Program.**

63.     Defendants MCPS and MCSD's routine practice is to enter a contract as part of the School Resource Officer Program ("SRO Agreement"). This SRO Agreement was in place at all times relevant to this action. The SRO Agreement has as one of its goals "[to] maintain a safe and secure environment on the school campus which will be conducive to learning."

64.     Under the SRO Agreement, Defendant MCPS works in conjunction with Defendant MCSD in assigning SRO officers to schools. Although SROs remain responsive to commands of Defendant MCSD, Defendant MCPS retains the ability to monitor SRO performance of duties and

responsibilities and report any failures to Defendant MCSD for potential resolution or reassignment.

65. One of the duties of the SRO per the SRO Agreement is to "take law enforcement action when necessary." The parties to the SRO Agreement specifically agreed "to provide their employees with training relative to [the] agreement and its purpose." The intention of the parties, as stated in the document, is to "maintain collaborative efforts to provide a safe and healthy school environment for all students, staff, faculty, and visitors."

66. According to the governmental website for Defendant Maury County, SRO Program features deputies who are "specially trained." The website claims "[t]hese officers have received extensive training regarding programs and services available to handle problems and conflicts."

67. The Defendants failed to provide an adequate training program or restrictions regarding use of force and/or restraints by SROs against schoolchildren. The SRO Agreement also did not provide guidance on appropriate uses of force for children in school settings; on appropriate use of handcuffing, arrest, or detention; or on methods of de-escalation prior to using force on children.

68. When Defendant Byrdsong was stationed by Defendant MCSD at T.C.'s school in May 2018, he had no specific training due to Defendants' conscious decision not to have an adequate training program. Without SRO training, Defendant Byrdsong was unequipped to safely assess risks in school settings.

69. Defendants MCSD and Maury County made a conscious decision in failing to provide an adequate training program. T.C.'s injuries were a direct result of that decision which left Defendant Byrdsong without guidance or restrictions on use of force and arrests with regard

to children. Defendant MCPS made a conscious decision in failing to report Defendant Byrdsong for uses of force that were "aggressive" which he performed without SRO training and failed to remove him from the school setting. In fact, Defendants placed Defendant Byrdsong at the school after Defendants MCSD and Maury County had deemed him unsafe to be around an adult dispatcher with their own agency.

70.    At all times relevant to this lawsuit, Defendant Byrdsong received training in use of force, restraint, handcuffing, and arrest techniques designed for use on adults. He did not receive training on use of force, restraint, handcuffing, arrest, negotiation, de-escalation, and conflict resolution techniques that are appropriate for use on children, people of small statute, children with disabilities, or in school environments.

71.    Defendants MCSD, Maury County, and MCPS consciously disregarded the risk of obvious physical and emotional harm to students at E.A. Cox Middle School, including T.C., from the lack of any SRO training and modifications to Defendant MCSD's use of force and arrest policies for adults and lack of supervision after Defendant Byrdsong's disciplinary history and untrained uses of force.

72.    As a result of the lack of training, implementation of the SRO Agreement at E.A. Cox Middle School resulted in the highly probable consequences of Defendant Byrdsong using excessive force on T.C. and possibly two students before T.C. Defendant Byrdsong's actions in subjecting T.C. to excessive force was a highly predictable and foreseeable result of the policy adopted and implemented without training by Defendants MCSD, Maury County, and MCPS. This risk was obvious to policy makers at MCSD, Maury County, and MCPS who are law enforcement and education officials because they knew their policy would result in uses of force

and restraint by Defendant Byrdsong on schoolchildren, and the policy intended for Defendant Byrdsong to use force and restraint on schoolchildren.

73. The risk of harm to T.C. was further made obvious because Defendants MCSD, Maury County, and MCPS knew of Defendant Byrdsong's prior uses of force at E.A. Cox and disciplinary history prior to his placement there. Defendants MCSD, MCPS, and Maury County failed to supervise Defendant Byrdsong after his uses of force and restraint preceding the assault on T.C.

74. By adopting the SRO Agreement and failing to train and supervise Defendant Byrdsong, Defendants MCSD, Maury County, and MCPS consciously disregarded the risk of obvious physical and emotional harm to T.C. The harm sought to be avoided by specialized SRO training and supervision of SROs is precisely the kind of harm suffered by T.C. at the hands of Defendants Byrdsong, MCSD, Maury County, and MCPS.

**D.     Municipal Liability of Defendants Maury County, MCSD, and MCPS.**

75. Defendants MCSD, Maury County, and MCPS all bore responsibility for Defendant Byrdsong's job-related SRO training. Defendants had reason to know, and did know, that Defendant Byrdsong would come into physical contact with schoolchildren and would use force and restraint, if needed, as evidenced by the SRO Agreement and Use of Force reports prior to his assault of T.C., as set forth above.

76. As Defendant Byrdsong's supervising entities, Defendants were responsible for monitoring his performance at E.A Cox Middle School and removing him from assignment. After two uses of force that involved taking students to the ground, Defendants were responsible for reviewing Defendant Byrdsong's performance.

77. Defendant Sheriff Bucky Rowland decided to place Defendant Byrdsong at E.A. Cox Middle School even though he knew that Defendant Byrdsong was not trained as an SRO. Sheriff Rowland continued to station Defendant Byrdsong at E.A. Cox Middle School even after two uses of force that involved taking a student to the ground. Sheriff Rowland did not insist on Defendant Byrdsong entering an SRO Basic Course at any point during Defendant Byrdsong's placement at E.A. Cox even though Defendant Byrdsong continued to regularly use force and restraint against students at a rate significantly higher than Maury County SROs who had received SRO training.

78. Sheriff Rowland is the final policy maker for Defendant MCSD because he has final decision-making authority. He oversees Defendant MCSD, including the SRO Program, and his signature is on the SRO Agreement on behalf of Defendant MCSD. His decision to place Defendant Byrdsong at E.A. Cox Middle School, authorized to use force without training, created the obvious risk that Defendant Byrdsong would use excessive force and restraint against a child. He further condoned, endorsed, and ratified Defendant Byrdsong's untrained use of force and restraint on young schoolchildren in violation of the Fourth Amendment and Eighth Amendment. The harm sought to be avoided by SRO training is precisely the kind of harm caused by Sheriff Rowlands's decision and ratification of placing Defendant Byrdsong at E.A. Cox Middle School without training. Defendants MCSD and Maury County are liable for the decisions of its policymaker.

79. The Maury County School Board and Superintendent Chris Marczak are the final policy makers for Defendant MCPS. The Maury County School Board has primary authority over school matters and management responsibilities over school matters are delegated to

18

Case 1:19-cv-00092   Document 1   Filed 11/27/19   Page 18 of 44 PageID #: 18

Superintendent Marczak. Superintendent Marczak's signature is on the SRO Agreement on behalf of Defendant MCPS.

80. As final policy makers for Defendant MCPS, the decisions of the Maury County School Board and Superintendent Marczack condoned and ratified Defendant Byrdsong's use of excessive force on young schoolchildren, including T.C., in violation of the Fourth Amendment and Eight Amendment. Defendant MCPS is liable for the decisions of its policymakers.

81. Neither Defendant MCPS, MCSD, nor Maury County ever disciplined Defendant Byrdsong for using force on students without training prior to T.C. Such discipline and oversight could have prevented T.C.'s injuries and deprivation of constitutional rights.

82. Upon information and belief, all Defendants learned of the uses of forces preceding the attack on T.C. Despite this knowledge, Defendants continued to fail to train and supervise Defendant Byrdsong. As a highly predictable result of Defendants' failure to train and failure to supervise Defendant Byrdsong, he then used excessive force against T.C. in the process of falsely arresting him as described above.

83. Having adopted the SRO Agreement and authorized SROs to use force and restraint, Defendants MCSD, Maury County, and MCPS knew of the risks of unreasonable and excessive force posed by lack of training and supervision. Defendants consciously disregarded those risks and acted with deliberate indifference by failing to provide adequate training. As a result, Defendant Byrdsong violated T.C.'s constitutional rights.

84. The persistent inaction by Defendants MCSD, Maury County, and MCPS policymakers demonstrates that these policymakers were deliberately indifferent to the obvious risk posed by Defendant Byrdsong Through its policymakers, Defendants MCSD, Maury County, and MCPS made the conscious decision not to provide an adequate training program or supervise

Defendant Byrdsong on uses of force against children, yet still authorized him to use force while interacting with children on a daily basis.

## E.     The Retaliation.

85.     After being assaulted by Defendant Byrdsong on November 30, 2018, T.C. did not transfer schools.  He returned to pursue his public education at E.A. Cox Middle School as a part of Defendant MCPS.  Inexplicably, Defendants MCPS, MCSD, and Maury County intentionally made T.C.'s school experience more difficult rather than create a supportive environment after his assault.

86.     After the assault, T.C. began to see the school mental health counselor provided in conjunction with the Mental Health Cooperative.  On January 11, 2019, the counselor called Ms. Craig to ask for her permission to transfer T.C. into different classes per certain teachers' request. When Ms. Craig inquired as to the need for such a transfer, the counselor replied stating that she was not at liberty to tell her, T.C.'s own mother and guardian of record, what teachers wanted to transfer T.C. from their classroom or why.

87.     The following Monday, E.A. Cox Principal Tracy Marks called Ms. Craig regarding an incident on the school bus.  T.C. was participating in a dancing game on the bus when a student threw an object hitting him in the back of the head.

88.     When T.C. threw the object back at the child, the bus driver brought this to Principal Marks's attention.  While on the phone with Ms. Craig, Principal Marks allowed T.C. to speak with his mother.  As T.C. began talking, Principal Marks interrupted him saying, "That boy is a liar from hell."

89.     Although the student who first threw the object was not disciplined, T.C. received an in-school suspension ("ISS") and a temporary suspension from school bus services.

90.     The Code of Behavior and Discipline for Defendant MCPS provides for a staggered discipline system that increases the punishment for first, second, third, etc. offenses.  Each progression allows a more serious punishment with the third or fourth offense of most categories allowing for reference to the Disciplinary Hearing Authority which has the power to suspend a student out of school or assign them to the alternative program.

91.     When MCSD terminated Defendant Byrdsong's employment on December 14, 2018, he was replaced by SRO David Epley ("Officer Epley").

92.     On March 5, 2019, T.C. was in ISS where he had been assigned for two days for getting into an argument with another student that escalated into a verbal altercation.  During the class period, the attending teacher gave T.C. an assignment that required him to turn to a certain page in a book and copy it.  T.C. forgot what page she assigned and asked for a reminder.  The teacher did not remember either.  T.C. asked how he was supposed to do the assignment if he did not know the page.

93.     The teacher said T.C. was being defiant and called Officer Epley.  Officer Epley responded to the classroom and after being told about the exchange stated, "You know what you have to do.  Keep writing him up until we can get him out of the school."

94.     Sometime around March 1, 2019, Ms. Craig received a call from the attendance secretary for E.A. Cox Middle School.  Ms. Craig was told that the district was re-zoning and she was calling everyone to verify addresses to see if anything needed to be changed.

95.     Ms. Craig was told that any new address information would be sent to the school board and the board would notify the student's family if they needed to change schools.  Ms. Craig said she had nothing to report.

96.     A few days later, Ms. Craig received a message from the same person saying that she would have to "ex-roll" T.C. from E.A. Cox immediately because of an address issue. Ms. Craig returned this call and asked for an explanation. Ms. Craig told the attendance secretary that there was no issue with her address on file with the school and T.C. would remain enrolled.

97.     After receiving a letter from T.C.'s attorney about this transparent attempt to remove T.C. from the school, Principal Marks contacted Ms. Craig. Principal Marks told Ms. Craig that the attendance secretary was only supposed to discuss "open enrollment" with Ms. Craig, which is a process whereby children can transfer between schools. Principal Marks insisted there was not supposed to be any mention of forcible "ex-rolling" of T.C. Principal Marks insisted on characterizing the call from the attendance secretary as a chance for T.C. to voluntarily leave the school.

98.     No other administrator for Defendant MCPS had heard of open enrollment when Ms. Craig asked them about it after this conversation. In concluding the conversation, Principal Marks said, "Are we on the same page with why we contacted you about the address?" Ms. Craig told her they were not on the same page about that.

99.     On March 27, 2019, Ms. Craig received a call from then-Vice Principal Mr. Dollar about T.C. being involved in an altercation with a female student in a classroom. T.C. had been laughing at some jokes being made by others about this girl's appearance when she turned around and hit T.C. multiple times.

100.     Mr. Dollar did not witness this incident and relayed from the teacher to Ms. Craig that it was T.C. who hit the student, not vice versa. After an investigation by SRO Epley, no charges or discipline were brought against the girl even though T.C. maintained that he had been hit in the head and face multiple times.

101.    On April 18, 2019, T.C. was involved in another incident at the school.  Some boys were making fun of T.C.'s brother, who has autism.  T.C. confronted on of the boys.  When the boy walked away from him, T.C. followed him saying he was not finishing speaking to him.  The two exchanged pushes.

102.    Officer Epley charged T.C. with an assault in Maury County Juvenile Court.  No charge was brought against the other boy.  T.C. was given two days of ISS for his involvement in this incident.

103.    On April 25, 2019, Ms. Craig pulled up to her home to see T.C. holding his arm in pain as he walked home from the bus stop.  T.C. said he fell during the school day and hurt his wrist.

104.    When T.C. asked his teacher to call his mother or take him to the nurse, the teacher said it can wait until after school because dismissal was only an hour and a half away.  After a trip to the Emergency Room, it was determined that T.C. had a badly sprained wrist.

105.    On May 15, 2019, Ms. Craig called E.A. Cox Middle School to ask for T.C.'s disciplinary record.   She wanted to make sure that T.C. would not be punished twice for the incident of April 18, 2019.  Mr. Dollar said he would get the record to her.

106.    When the record was not sent, Ms. Craig called and left several messages regarding her request.  When she did not receive any response, Ms. Craig went to the school and asked in person.

107.    The office administrator on duty said that Mr. Dollar was not at the school.  The administrator responded by saying she would go print the record for Ms. Craig.  The administrator was gone for 15 minutes before returning with T.C.'s record.  Strangely, none of the three

suspensions T.C. had received since being assaulted by Defendant Byrdsong on November 30, 2018 were reflected in his record.

108.    On May 17, 2019, T.C. was involved in another incident at school that resulted in him being charged with disorderly conduct.  No other students were charged even though videos existed showing them all shoving each other.

109.    Officer Epley admitted that the videos he saw from other students could have shown the events out of order preventing him from determining who shoved who first.  T.C. was suspended until the end of the school year, which was roughly another week from that time.

110.    Over the summer, Ms. Craig applied for T.C. to be specially transferred to another school.  The transfer was denied due to T.C.'s disciplinary record.  This did not bother T.C. because he actually wanted to return to E.A. Cox Middle School.

111.    Within three weeks of starting back to school in August 2019, Officer Epley once again focused his attention on T.C.  During a Physical Education ("PE") class, Officer Epley asked T.C. why he looked upset.  T.C. responded saying, "With all due respect, sir, I don't want to talk about why I'm upset."

112.    Officer Epley told T.C., "If you don't want to be ruined, you will show me respect." The attending PE Coach told the other students, "If anybody sticks up for T.C., they will get a step."  Steps are essentially demerits in the school disciplinary system.

113.    On August 27, 2019, Ms. Craig met at the school with Principal Marks, several teachers, and Officer Epley regarding their treatment of T.C.  Ms. Craig told them all that until she was able to relocate her family, T.C. was going to remain at E.A. Cox Middle School.

114.    Principal Marks told Ms. Craig that T.C. was not going to be at the school much longer.  Ms. Craig told those present that T.C.'s behavior would improve as soon as they changed

their behavior toward him. Ms. Craig told those present that she believed all of the negative attention toward T.C. stemmed from the Defendants' blaming him for Defendant Byrdsong's assault coming to light. Principal Marks told Ms. Craig that T.C. was heading for juvenile. Ms. Craig told those present that none of the children who had bullied T.C. had ever been disciplined. Upon information and belief, Officer Epley recorded this interaction with his body camera.

115.    On September 5, 2019, Ms. Craig received a call from a school administrator, Ms. Davenport, saying that T.C. had not submitted proof of his vaccinations for that year. Ms. Craig responded saying she had submitted those records on August 30, 2019.

116.    Ms. Davenport responded saying that the school had called the doctor's office and the vaccinating doctor, as reflected in the record, was not practicing at that location anymore. Ms. Craig responded saying she already knew that but the vaccination had been performed in May 2019.

117.    Nonetheless, Ms. Craig called the doctor's office and requested they confirm T.C.'s vaccination with the school. The doctor's office told Ms. Craig that no one from the school had called to inquire about T.C.'s records. The doctor's office then faxed a new copy of T.C.'s vaccination record to the school. Ms. Craig called the school back, and Ms. Davenport told Ms. Craig she had not received anything.

118.    Ms. Craig then called the doctor's office back and asked them to conference call the school with her to verify the school's receipt of the record. When the doctor's office did so, they asked if the school could confirm receipt.

119.    At first, Ms. Davenport said they had not received it. When Ms. Craig spoke up and identified herself, Ms. Davenport said, "Oh, is this Ms. Craig? I don't know why she is being

so dramatic, I told her when she called a while ago that we had received it." This was yet another blatant attempt to prevent T.C. from attending school which is his constitutional right.

120.    On November 22, 2019, T.C. was suspended from school for one day for cutting a classmate's hair. The two had been pranking each other all day. Prior to T.C. cutting her hair, the other student had cut up a homework assignment that T.C. needed to submit to his teacher. T.C. received a "zero" grade for not having it. T.C was not upset by this because the two were going back and forth. After the incident, school staff contacted Ms. Craig to inform her T.C. was being suspended. The other girl was not disciplined. In fact, school staff informed Ms. Craig that the parents of the girl had been contacted and they expected her to pay for the girl's hair to be cut and fixed, if necessary.

121.    Ms. Craig rightfully found it odd that the parents of this girl were contacted because her hair had been cut as a joke but she had to find out from the District Attorney's Office two weeks after the fact that her son had been body-slammed to the ground by Defendant Byrdsong and handcuffed while he was unconscious. The school actually never informed Ms. Craig of the circumstances of T.C.'s injury causing her to lose precious time in having him seen by medical professionals with the accurate description of his injury, which T.C. could not remember himself due to his concussion.

122.    T.C. has a property right in his public education. Through the efforts of E.A. Cox Middle School faculty and staff, Defendants MCPS, MCSD, and Maury County, through Officer Epley and school staff, have consistently taken adverse actions against T.C. since the assault on him by Defendant Byrdsong. These efforts cannot reasonably be said to be motivated by anything other than T.C.'s engagement of conduct protected by the Constitution, specifically, to pursue his public education. The very fact that T.C. has continued to pursue his education at E.A. Cox Middle

School after the assault on him, has motivated Defendants MCPS, MCSD, and Maury County to take the numerous adverse actions described *supra.*

123. Since these adverse actions by Defendants MCPS, MCSD, and Maury County were motivated by a desire to punish T.C. for the exercise of his constitutional right to a public education, Defendants MCPS, MCSD, and Maury County are liable to him for retaliation in violation of federal law.

124. As all Defendants know or should know, children do not shed their constitutional rights at the schoolhouse door.

## V. CLAIMS FOR RELIEF

### COUNT ONE
### Use of Excessive Force in Violation of the Fourth Amendment and Eighth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Byrdsong in his Individual Capacity and Official Capacity

125. The allegations of Paragraphs 1 through 124 of this Complaint are incorporated by reference as if fully set forth herein.

126. The Fourth Amendment and Eight Amendment to the U.S. Constitution protect an individual's right to be free from objectively unreasonable uses of force that are excessive to the need.

127. Defendant Byrdsong's assault of T.C., as described in the foregoing paragraphs, was objectively unreasonable and excessive use of force under the circumstances.

128. Defendant Byrdsong's actions violated T.C.'s clearly established constitutional rights.

129. At all times relevant to this action, Defendant Byrdsong acted under color of state law and is liable pursuant to 42 U.S.C. § 1983.

27

130.     Defendant Byrdsong's actions were intentional, malicious, and reckless and showed a callous disregard for T.C.'s rights.

131.     Defendant Byrdsong's actions directly and proximately caused T.C. to suffer significant physical and psychological injuries.  Accordingly, Defendant Byrdsong is liable to T.C. for compensatory and punitive damages.

## COUNT TWO
### False Arrest in Violation of the Fourth Amendment
### Pursuant to 42 U.S.C. § 1983
### Against Defendant Byrdsong in his Individual Capacity and Official Capacity

132.     The allegations of Paragraphs 1 through 131 of this Complaint are incorporated by reference as if fully set forth herein.

133.     Defendant Byrdsong unlawfully seized T.C. when he grabbed him, slammed him into the ground, and handcuffed his unconscious body.

134.     Defendant Byrdsong arrested T.C. without a warrant or probable cause.

135.     Although Defendant Byrdsong charged T.C. with an assault, listing himself as the victim, he informed T.C.'s mother that he did not believe T.C. was attempting to assault him.  The charge against T.C. was dismissed.

136.     The facts and circumstances within Defendant Byrdsong's knowledge would not have caused a prudent officer to believe, under the circumstances shown, that T.C. had committed or was committing a criminal offense.

137.     A reasonable officer in the same circumstances and possessing the same knowledge as Defendant Byrdsong could not have believed that probable cause existed to place T.C. under arrest while he was unconscious.

138.     The unlawful arrest by Defendant Byrdsong directly caused T.C. to suffer mental anguish, humiliation, embarrassment, shame, loss of reputation, and other damages.

139.    Defendant Byrdsong's actions were intentional, malicious, and reckless and showed a callous disregard for T.C.'s rights.

140.    This unlawful arrest occurred after prior instances of Defendant Byrdsong using similar force and restraint against two different students within five months of employment by Defendants MCSD, Maury County, and MCPS of which all Defendants had knowledge.

141.    This unlawful arrest in violation of T.C.'s constitutional rights is a direct result of the deliberate indifference by Defendants MCSD, Maury County, and MCPS to provide an adequate training program and supervise Defendant Byrdsong.

142.    Defendant Byrdsong is liable in his individual and official capacity to T.C. for compensatory and punitive damages.

### COUNT THREE
### Use of Excessive Force in Violation of the Fourth Amendment and Eighth Amendment
### (*Monell*/Municipal Liability)
### Pursuant to 42 U.S.C. § 1983
### Against Defendants MCPS, MCSD, Maury County, and Sheriff Bucky Rowland in his Official Capacity

143.    The allegations of Paragraphs 1 through 142 of this Complaint are incorporated by reference as if fully set forth herein.

144.    The Fourth Amendment and Eight Amendment to the U.S. Constitution protect an individual's right to be free from objectively unreasonable uses of force that are excessive to the need.

145.    Defendant Byrdsong's assault of T.C., as described in the foregoing paragraphs, was objectively unreasonable and excessive use of force under the circumstances.

146.    Defendant Byrdsong's actions violated T.C.'s clearly established constitutional rights.

147.     At all times relevant to this action, Defendant Byrdsong acted under color of state law and is liable pursuant to 42 U.S.C. § 1983.

148.     Defendant Byrdsong's actions were intentional, malicious, and reckless and showed a callous disregard for T.C.'s rights.

149.     At all relevant times Defendant Brydsong was employed as an SRO by Defendants MCPS, MCSD, and Maury County.

150.     As the final policymaker for Defendant MCSD, Sheriff Rowland made a deliberate choice to place and keep Defendant Byrdsong at E.A. Cox Middle School without training even after he had used force on two students prior to T.C. that involved taking the students to the ground and using handcuffs.

151.     Even if Sheriff Rowland's course of action could be described as a single decision to place Defendant Byrdsong at the school while authorized to use force against schoolchildren like T.C. without training, that single decision was consciously chosen from among various alternatives.

152.     Sheriff Rowland's decision as Defendant MCSD's policymaker directly caused the violation of T.C.'s Fourth Amendment and Eighth Amendment rights and makes Defendants MCSD and Maury County liable for the violation.

153.     Defendants MCPS, MCSD, and Maury County are also liable for the violation of T.C's constitutional rights due to their ratification of their employee's illegal conduct after the review and approval of their final policymakers.

154.     Through the use of force reports and other information, Sheriff Rowland and Superintendent Marczak as final policymakers for Defendants MCSD and MCPS, respectively, became aware of the decisions by Defendant Byrdsong to use force without training against

students and subsequent approval by Defendant Byrdsong's supervisor of those incidents including, initially, the use of force against T.C.

155. The knowing approval of Defendant Byrdsong's actions by final policymakers for Defendants MCPS and MCSD ratified those actions and made Defendants MCPS, MCSD, and Maury County liable for the resulting injuries to T.C.

156. All Defendants' actions directly and proximately caused Plaintiff T.C. to suffer significant physical and psychological injuries. Accordingly, Defendants MCPS, MCSD, and Maury County are liable to T.C. for compensatory and punitive damages.

**COUNT FOUR**
**Failure to Train (*Monell*/Municipal Liability)**
**Pursuant to 42 U.S.C. § 1983**
**Against Defendants MCPS, MCSD, Maury County, and Sheriff Bucky Rowland in his**
**Individual Capacity and Official Capacity**

157. The allegations of Paragraphs 1 through 156 of this Complaint are incorporated by reference as if fully set forth herein.

158. Defendants MCPS, MCSD, Maury County, and Sheriff Rowland are liable for Defendant Byrdsong's actions, as their polices, practices, and customs directly resulted in the deprivation of T.C.'s constitutional rights.

159. In contravention of federal and state law and National Association of School Resource Officers ("NASRO") best practices, Defendants MCPS, MCSD, Maury County, and Sheriff Rowland acted with deliberate indifference by adopting a written policy of authorizing SROs to "take law enforcement action when necessary" and help enforce the school code of conduct, yet implemented no training program adequate to properly train deputies prior to putting them in the schools to carry out that function safely.

160. MCPS has a written "Security" policy (Policy 3.205) that requires no training for SROs. It fails to require any training prior to placing an SRO in the schools or at anytime. However, this policy does acknowledge the importance of providing training to SROs on "school policing." The Policy provides that:

> The Board may enter into a memorandum of understanding with the chief law enforcement agency to provide school policing. Any memorandum of understanding shall address, at a minimum, the following issues. 1. Any School Resource Officer (SRO) assigned under a memorandum must be in compliance with all laws, regulations and rules of the Peace Officer Standards and Training Commission at the time of assignment and remain compliant throughout the tenure of his or her assignment; 2. As a condition of assignment, any SRO must participate in forty (40) hours of basic training in school policing within twelve (12) months of assignment. Every year thereafter, the SRO shall participate in a minimum of sixteen (16) hours of training specific to school policing. All training programs shall be approved by the Peace Officers Standards and Training Commission.

161. The policy quotes Tennessee Code Annotated § 49-6-4217, which is state law requiring the specified SRO Training.

162. Defendants MCPS and MCSD did enter into an SRO agreement contemplated by the MCPS Policy No. 3.205, yet wholly failed to follow the MCPS Policy. The SRO Agreement was entered into on August 8, 2018 and was signed by Dr. Chris Marczak, Director of Maury County Public Schools, and Bucky Rowland, Maury County Sheriff.

163. The Agreement's only reference to training provides that "The Maury County Sheriff's Department and the Maury County Public Schools agree to provide their employees with training relative to this agreement and its purpose." There is no requirement that the SRO be trained before being placed on school premises, there is no requirement for any training on use of force on children, nor any training on how a law enforcement officer is to comport himself when going over and beyond law enforcement and assisting the school with "enforcing the campus code of conduct and other school rules."

164.     Defendant Rowland is a county official with policymaking authority over training and supervising the deputies under his command, including Defendant Byrdsong.  Defendant Rowland made the decision to place Defendant Byrdsong, an untrained SRO at E.A. Cox Middle School; made the decision to place Defendant Byrdsong at the school even though MCSD had issued a no contact order against him with respect to an adult co-worker; made the decision not to terminate Defendant Byrdsong, remove him from the school, or require him to be trained after the first two uses of reported force by him against middle school students; and did not terminate him for the brutal assault on T.C. until the video surfaced which vividly detailed the brutal assault.

165.     Defendant Byrdsong's supervisor signed off on all three uses of force, including the one involving T.C.  Defendant Byrdsong was terminated, however, after the video surfaced.

166.     Defendant Rowland's deliberate policy decisions provide a basis for municipal liability separate and apart from the inadequate training policy.

167.     The type of harm suffered by T.C. due to Defendants MCPS, MCSD, Maury County, and Sheriff Rowland failure to have an adequate training program  is precisely the kind of harm sought to be avoided by specialized SRO training. It is obvious that the harm caused would occur without the specialized training for policing children in schools. When policing children in schools, Defendants' officers deal with the recurrent situation of having to use force on children. The need for training on this was obvious and the Defendants showed deliberate indifference to this need.  The policymakers were aware of the need for specialized training, yet it was ignored.

168.     Defendants MCPS, MCSD, Maury County, and Sheriff Rowland are further liable because Defendant Rowland, final policymaker, was deliberately indifferent to the harm that would obviously result from his decisions.  He could have required training but chose not to require it even after two uses of force against children. Defendant Rowland has described one of the prior

instances of force against a child at E.A. Cox Middle School as "aggressive." Defendant Rowland further ratified Defendant Byrdsong's illegal conduct by approving after review his uses of force without training, which signals that the conduct conformed to Defendants' policy.

169. For their repeated failure to adequately train, supervise, or discipline Defendant Byrdsong, Defendants MCPS, MCSD, Maury County, and Sheriff Rowland are liable for the violation of T.C.'s constitutional rights.

170. Defendant Byrdsong's actions against T.C. directly resulted from Defendants MCPS, MCSD, Maury County, and Sheriff Rowland's deliberate indifference to the risk of excessive force and false arrest against schoolchildren like T.C., created by their deliberately indifferent failure to provide an adequate training program and supervise Defendant Byrdsong.

171. Defendants MCPS, MCSD, Maury County, and Sheriff Rowland violated T.C.'s clearly established right to be free of excessive force and unlawful arrest under the Fourth Amendment and Eighth Amendment to the United States Constitution and are liable pursuant to 42. U.S.C. § 1983 and federal case law.

172. Defendants MCPS, MCSD, and Maury County's actions directly and proximately caused T.C. to suffer significant physical and psychological injuries. Accordingly, Defendants MCPS, MCSD, Maury County, and Sheriff Rowland are liable to T.C. for compensatory and punitive damages.

**COUNT FIVE**
**Failure to Supervise (*Monell*/Municipal Liability)**
**Pursuant to 42 U.S.C. § 1983**
**Against Defendants MCPS, MCSD, Maury County, and Sheriff Bucky Rowland in his**
**Individual Capacity and Official Capacity**

173. The allegations of Paragraphs 1 through 172 of this Complaint are incorporated by reference as if fully set forth herein.

34

174.    Defendants MCPS, MCSD, Maury County, and Sheriff Rowland all failed to supervise Defendant Byrdsong after two uses of force without training that involved taking young children to the ground and handcuffing them.

175.    Defendants MCPS, MCSD, Maury County, and Sheriff Rowland are liable for their actions due to their custom, tolerance, and acquiescence to federal rights violations by Defendant Byrdsong who repeatedly brought schoolchildren to the ground and handcuffed them without training in doing so to children.

176.    Defendants MCPS, MCSD, Maury County, and Sheriff Rowland are liable for these actions because they failed to take any remedial action in the face of an obvious need to act and their failure to act amounts to deliberate indifference.

177.    Defendant Byrdsong's actions against T.C. directly resulted from Defendants MCPS, MCSD, Maury County, and Sheriff Rowland's deliberate indifference to the risk of excessive force and false arrest against schoolchildren like T.C., created by their deliberately indifferent failure to provide an adequate training program and supervise Defendant Byrdsong.

178.    Had Defendant Byrdsong been trained, or removed from the force or the school following either or both of his prior uses of force without training, T.C. could have been spared the humiliation, indignity, and violation to which he was subjected by Defendant Byrdsong while Defendant Byrdsong was on duty, in uniform, and armed to use force against schoolchildren without training.

179.    Defendants MCPS, MCSD, Maury County, and Sheriff Rowland violated T.C.'s clearly established right to be free of excessive force and unlawful arrest under the Fourth Amendment and are liable pursuant to 42. U.S.C. § 1983 and federal case law.

180.     Defendants MCPS, MCSD, Maury County, and Sheriff Rowland's actions directly and proximately caused T.C. to suffer significant physical and psychological injuries. Accordingly, Defendants MCPS, MCSD, Maury County, and Sheriff Rowland are liable to T.C. for compensatory and punitive damages.

## COUNT SIX
### Retaliation in Violation of the Due Process Clause of the Fifth Amendment
### (*Monell*/Municipal Liability)
### Pursuant to 42 U.S.C. § 1983
### Against Defendants MCPS, MCSD, and Maury County

181.     The allegations of Paragraphs 1 through 180 of this Complaint are incorporated by reference as if fully set forth herein.

182.     T.C. has a constitutional right to his public education.

183.     Through baseless, biased, and unwarranted disciplinary action and outright misrepresentations designed to remove T.C. from E.A. Cox Middle School, Defendants MCPS, MCSD, and Maury County have consistently taken adverse action towards T.C. since his continued enrollment after the assault on him by Defendant Byrdsong.

184.     The cause  of Defendants' scrutiny of T.C. was the very fact of his continued enrollment at E.A. Cox.  The purpose of such scrutiny was to rid the school of T.C.  The actions of Defendants MCPS, MCSD, and Maury County in their mistreatment of T.C. after his assault were motivated by their desire to punish him for simply continuing to pursue his public education at the school to which he is constitutionally entitled under the Fourteenth Amendment.

185.     The motivation of Defendants MCPS, MCSD, and Maury County's adverse actions carried out by their employees acting under color of their office towards T.C. is precisely because of his continued enrollment at E.A. Cox Middle School, which is his constitutional right.

36

Defendants MCPS, MCSD, and Maury County were deliberately indifferent to the violation of T.C.'s constitutional right to a public education by their employees' retaliation.

186.    Defendants MCPS, MCSD, and Maury County are liable for their actions due to their custom, tolerance, and acquiescence to the violation of T.C.'s constitutional right to a public education by their employees' retaliation.

187.    Defendants MCPS, MCSD, and Maury County are also liable for the violation of T.C.'s constitutional rights due to their ratification of their employee's illegal conduct after the review and approval of their final policymakers.

188.    Defendants MCPS, MCSD, and Maury County have violated T.C.'s right to a public education by retaliating against him for his engagement in protected conduct.

189.    For this retaliation, Defendants MCPS, MCSD, and Maury County are liable to T.C. who has suffered significant emotional injury as a result, and T.C. is entitled to recover for further compensatory and punitive damages.

**COUNT SEVEN**
**Assault and Battery**
**Against Defendants Byrdsong in his Individual Capacity and Official Capacity and Maury County**

190.    The allegations of Paragraphs 1 through 189 of this Complaint are incorporated by reference as if fully set forth herein.

191.    Defendant Byrdsong intentionally made harmful physical contact with T.C. Specifically, Defendant Byrdsong grabbed T.C. with both arms, lifted him to Defendant Byrdsong's shoulder level, and slammed T.C. into the ground knocking him into unconsciousness for almost one full minute.

192.    Defendant Byrdsong then handcuffed T.C.'s unconscious body. Since then, T.C. has further suffered headaches, confusion, and memory loss.

193.    The force used by Defendant Byrdsong against T.C. was beyond excessive and completely unconscionable by any reasonable standard.

194.    Because Defendant Byrdsong caused T.C.'s injury while acting under color of his office, Defendant Maury County is liable to T.C. for Defendant Byrdsong's actions pursuant to T.C.A. § 8-8-302.

195.    Since T.C.'s injuries are the proximate result of Defendant Byrdsong's intentional, willful, and wanton conduct, Defendants Byrdsong and Maury County are liable to T.C. for compensatory and punitive damages.

**COUNT EIGHT**
**Intentional Infliction of Emotional Distress**
**Against Defendants Byrdsong in his Individual Capacity and Official Capacity and Maury County**

196.    The allegations of Paragraphs 1 through 195 of this Complaint are incorporated by reference as if fully set forth herein.

197.    Defendant Byrdsong acted intentionally and recklessly when he used excessive force on T.C. in the school hallway in front of other children.

198.    Defendant Byrdsong's conduct in grabbing T.C. with both arms, lifting him to Defendant Byrdsong's shoulder level, and slamming T.C. into the ground knocking T.C. into unconsciousness for almost one full minute is completely outrageous and not to be tolerated by civilized society given T.C.'s size and stature compared to that of Defendant Byrdsong.

199.    Defendant Byrdsong's attack resulted in T.C. suffering an immediate concussion and subsequent and continuing headaches, confusion, and memory loss.  T.C. has further suffered significant increase in anxiety, distrust of law enforcement, continued stress, and other emotional damages from Defendant Byrdsong's attack.

200.    Because Defendant Byrdsong caused T.C.'s injury while acting under color of his office, Defendant Maury County is liable to T.C. for Defendant Byrdsong's actions pursuant to T.C.A. § 8-8-302.

201.    Since T.C.'s injuries are the proximate result of Defendant Byrdsong's intentional, willful, and wanton conduct, Defendants Byrdsong and Maury County are liable to T.C. for compensatory and punitive damages.

**COUNT NINE**
**False Imprisonment**
**Against Defendant Byrdsong in his Individual Capacity and Official Capacity and Maury County**

202.    The allegations of Paragraphs 1 through 201 of this Complaint are incorporated by reference as if fully set forth herein.

203.    By body-slamming T.C. into unconsciousness and straddling his body while T.C. laid on the ground, Defendant Byrdsong intentionally confined and restrained T.C.

204.    By actually applying one handcuff to T.C.'s body while T.C. was unconscious and the other handcuff while T.C. was semiconscious, Defendant Byrdsong intentionally confined and restrained T.C.

205.    By applying handcuffs to T.C. while straddling his body then holding him with both arms, Defendant Byrdsong intentionally confined and restrained T.C.

206.    Defendant Byrdsong effected this confinement and restraint of T.C. against T.C.'s will.

207.    Defendant Byrdsong's confinement and restraint through the use of force against T.C. was without a warrant or probable cause to believe that he was under assault as he later admitted.

208.     Because Defendant Byrdsong caused T.C.'s injury while acting under color of his office, Defendants Maury County is liable to T.C. for Defendant Byrdsong's actions pursuant to T.C.A. § 8-8-302.

209.     Since T.C.'s injuries are the proximate result of Defendant Byrdsong's intentional, willful, and wanton conduct, Defendants Byrdsong and Maury County are liable to T.C. for compensatory and punitive damages.

**COUNT TEN**
**Negligence**
**Against Defendants MCPS, MPSD, and Maury County**

210.     The allegations of Paragraphs 1 through 209 of this Complaint are incorporated by reference as if fully set forth herein.

211.     At all relevant times, Defendants owed T.C. a duty to act in a reasonable and prudent manner, exercise due care and caution, and provide a safe and secure environment for the students of E.A. Cox Middle School including T.C.

212.     Defendants MCPS, MCSD, and Maury County breached this duty knowingly employing Defendant Byrdsong at E.A. Cox Middle School as an SRO authorized to use force against students without training and failing to supervise or discipline him after two uses of force against schoolchildren that involved taking the student to the ground and handcuffing them prior to his assault on T.C.

213.     As a further and direct proximate result of all Defendants' breaches of their duties, T.C.'s constitutional rights were violated causing his injuries and unnecessary pain and suffering.

214.     Defendants' actions and/or omissions as it relates to the non-intentional state law claims in this case are not protected by the immunity provision in the GTLA because T.C.'s claims arise from the negligent acts and/or omissions of Defendants' employees acting within the scope

of their employment (T.C.A. § 29-20-205) while performing nondiscretionary functions of the employment.

215.     Accordingly, Defendants MCPS, MCSD, and Maury County are liable to T.C. for compensatory damages for their breach of the duties owed to him which caused him such injuries.

**COUNT ELEVEN**
**Negligent Infliction of Emotional Distress**
**Against Defendants MCSD, MCPS, and Maury County**

216.     The allegations of Paragraphs 1 through 215 of this Complaint are incorporated by reference as if fully set forth herein.

217.     At all relevant times, Defendants owed T.C. a duty to act in a reasonable and prudent manner, exercise due care and caution, and provide a safe and secure environment for the students of E.A. Cox Middle School including T.C.

218.     Defendants MCPS, MCSD, and Maury County breached this duty knowingly employing Defendant Byrdsong at E.A. Cox Middle School as an SRO authorized to use force against students without training and failing to supervise or discipline him after two uses of force against schoolchildren that involved taking the student to the ground and handcuffing them prior to his assault on T.C.

219.     As a further and direct proximate result of Defendants MCPS, MCSD, and Maury County breaches of their duties, T.C. suffered significant mental anguish and emotional distress resulting in the need for psychiatric care.

220.     Defendants' actions and/or omissions as it relates to the non-intentional state law claims in this case are not protected by the immunity provision in the GTLA because T.C.'s claims arise from the negligent acts and/or omissions of Defendants' employees acting within the scope

41

of their employment (T.C.A. § 29-20-205) while performing nondiscretionary functions of the employment.

221.    All Defendants MCPS, MCSD, and Maury County are liable to T.C. for compensatory damages for their breach of the duties owed to him which caused him such injuries.

### COUNT TWELVE
### Negligent Supervision and Retention
### Against Defendants MCPS, MCSD, and Maury County

222.    The allegations of Paragraphs 1 through 221 of this Complaint are incorporated by reference as if fully set forth herein.

223.    At all relevant times, Defendants owed T.C. a duty assign competent SROs to police E.A. Cox Middle School where T.C. was a student.  Defendants had a duty to provide an adequate training program and to supervise and discipline their agents/employees, including Defendant Byrdsong.

224.    Defendants MCPS, MCSD, and Maury County breached this duty by knowingly employing Defendant Byrdsong at E.A. Cox Middle School as an SRO authorized to use force against students without training, failing to provide an adequate training program, and failing to supervise or discipline Defendant Byrdsong after two uses of force against schoolchildren that involved taking the student to the ground and handcuffing them prior to his assault on T.C.

225.    Defendants had actual knowledge of these prior uses of force as shown in the use of force reports made by Defendant Byrdsong.

226.    As a further and direct proximate result of all Defendants' breaches of their duties, T.C.'s constitutional rights were violated causing his injuries and unnecessary pain and suffering.

227.    Defendants' actions and/or omissions as it relates to the non-intentional state law claims in this case are not protected by the immunity provision in the GTLA because T.C.'s claims

arise from the negligent acts and/or omissions of Defendants' employees acting within the scope of their employment (T.C.A. § 29-20-205) while performing nondiscretionary functions of the employment.

228. Accordingly, Defendants MCPS, MCSD, and Maury County are liable to T.C. for compensatory damages for their breach of the duties owed to him which caused him such injuries.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court issue the following relief:

1. Assume jurisdiction over this matter;

2. Find the Defendants jointly and severally liable to T.C. for his injuries;

3. Award Plaintiff compensatory damages against Defendants Maury County, MCSD, MCPS, Byrdsong, and Sheriff Rowland in an amount not less than $ 1.5 million;

4. Award Plaintiff punitive damages against Defendants Maury County, MCSD, MCPS, Byrdsong, and Sheriff Rowland in an amount not less than $ 5 million;

5. Award Plaintiff the costs of this lawsuit, including reasonable and necessary attorney fees and expert fees pursuant to 42 U.S.C. § 1988;

6. Award Plaintiff pre-judgment and post-judgment interest as allowed by law;

7. Grant any other relief, at law or in equity, which this Honorable Court deems just and proper;

8. Plaintiff specifically reserves the right to amend this Complaint to conform to the evidence.

## VII. DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff T.C. demands a trial by jury in this action of all issues so triable.

43

Respectfully submitted,

**Sherwood Boutique Litigation, PLC**

/s/ Cynthia A. Sherwood
Cynthia A. Sherwood (BPR# 20911)
Davis F. Griffin (BPR# 34555)
201 Fourth Avenue N., Suite 1130
Nashville, TN  37219
T: 615-873-5670
F: 615-873-5671

*Counsel for Plaintiff*